We move to the second case this morning, Burlaka v. Contract Transport Services. Mr. Ho. Good morning, Your Honors. My name is Ng-Tau Ho. I represent the plaintiffs in this case. My clients were spotters employed by CTS to work at Green Bay Packaging. In that capacity, they delivered trailers either within or between Green Bay Packaging facilities in Green Bay, Wisconsin, or entirely within or between Green Bay Packaging facilities in De Pere, Wisconsin. There are other CTS drivers who did make deliveries interstate. The question before this Court is, on this summary judgment record, is there any undisputed evidence linking the plaintiffs' intra-city movements with inter-city movements done by other CTS drivers? And we will submit there isn't, because first of all, there is no immediate link between the plaintiffs' intra-city movements and interstate movements by other CTS drivers. And that is because when the plaintiffs unload any trailers at the warehouses, those trailers get, and if the plaintiffs deliver any trailers to the warehouses, those trailers get unloaded at those warehouses. And that's from paragraph 8 of the Freshman Declaration, appendix page 84. And once that trailer gets unloaded, that trailer becomes available for subsequent delivery, including potentially interstate delivery. So what CTS has proven in this case is the continuity of trailers, not the continuity of products. Additionally, if you look at the documentation that CTS submitted to the District Court, there's nothing in those records that show what was in the trailers when the plaintiffs and spotters moved them. Consequently, there is no proof the same products were in the trailers, both when the plaintiffs moved them, and subsequently, when the interstate driver moved the same trailer. We're talking about whether there's any proof that the plaintiffs actually drove trailers loaded with goods that were destined for an out-of-state destination. Correct. Whether there's any proof the plaintiffs would drop off a trailer or someone else would simply pick that up and deal with it. But they're covered if they were subject to driving trailers, right, that would be on public roads and then be part of a journey. What? Out-of-state, and you're saying that you don't think the evidence proved... Let's say that I agree with you that there's insufficient evidence to show the plaintiffs actually drove any such trailers. What about that they were subject to? Well, they were not, though, because any trailers they delivered to the warehouses would be unloaded at those warehouses. But for short periods of time, right? Sometimes those goods, it was just kind of a very short, temporary stop, which doesn't necessarily interrupt the interstate journey. And CTS's argument on that actually misstates the record. What CTS assumes is that when the trailer gets delivered to the warehouse, it gets unloaded and the products get packed back onto that same trailer and then delivered. That's why CTS argues that stays in that warehouse for no longer than six days. But that's not a record, because there's no evidence the same products were in the trailer, both when the plaintiffs delivered the trailer and during the subsequent interstate delivery of that same trailer. There were different products in the trailer during the two trips. So what we have against the continuity of trailers, not the continuity of products. In fact, if you look at CTS's proposed findings of fact, there are four paragraphs in that proposed finding of fact that attempt to link the plaintiff's movements with subsequent interstate movements. There's paragraphs 22, 37, 55, and 86. Each of those paragraphs were vigorously disputed by the plaintiffs. And those were the factual disputes that the district court erred by overlooking. Well, I have a question about that. When you say they were vigorously disputed, remember, though, at summary judgment, it's not just that you dispute it that's enough. A reasonable jury would have to find those facts in your favor. And I think the district court thought a reasonable jury could not find those facts in your favor. The fact that you disputed them isn't enough to stave off summary judgment. Well, the Frischman Declaration is actually undisputed that when the trailers get to the warehouses, they get unloaded. And that the trailer will subsequently be reloaded with other products they use for subsequent delivery. So there's no evidence in this record, and a reasonable jury cannot find the same products were in the trailers, both when the plaintiffs moved them and subsequently when the different driver delivered the same trailer, not the same product, out of state. So there's no continuity of products that will make the plaintiff's delivery a portion of an interstate journey. Maybe I'm missing something here. But, counsel, I thought we've got this pretty good authority that if the products being transported are substantially transformed along the way, for example, if raw cardboard is turned into finished boxes, that's not continuous for purposes of interstate transport. But if you've got finished boxes, why would you unload them and then reload them onto a different trailer? They're not. The boxes get delivered to the warehouse because they're stored there. And that trailer subsequently gets reused, repurposed, to deliver other boxes out of state. Therefore, there's no continuity of the delivery of boxes between the plaintiff's trips and subsequent interstate deliveries. The other possibility, and the CTS does argue this, is that the plaintiff's deliveries to the warehouses is part of a continuous journey because those boxes, even though they're not immediately delivered out of state, they will eventually be delivered by someone out of state. We have two arguments against this. The first argument is there's no admissible evidence showing that any interstate deliveries actually originated from the warehouses. And this is adequately addressed in our briefs. The second, perhaps more important argument, though, is in order for that delivery to the warehouse to be the first leg of a continuous interstate journey, the shipper, in this case Green Bay Packaging, must have had intent at the time of that initial journey for those products to be shipped out of state. That's the D.T. Harrod and Project Hope cases that CTS relies upon. Therefore, if the initial delivery from the manufacturing site to the warehouse, if the shipper doesn't determine where to sell that product until after that product reaches their warehouse, the initial delivery to the warehouse is not the first leg of a continuous interstate journey. That's the Segret case from the Northern District of Illinois. That's also the Southern Pacific Railroad case from the 9th Circuit that we cited in our briefs. That is exactly this case. There's no evidence in this record that whenever the plaintiffs moved the boxes, whether to the drop lot, whether to any of the warehouses, Green Bay Packaging had any ultimate customer in mind for those boxes, whether it was an interstate customer or a customer that was in Wisconsin. Therefore, there's no proof of intent on the part of the shipper to establish the plaintiff's trips as the first leg of an interstate journey. I want to address two other arguments quickly. First is there's no dispute that on the side of Green Bay Packaging's shipping container, there are parking spots, and that the plaintiffs do move trailers from shipping container to the parking spots, and that other drivers could then pick up those trailers and deliver them out of state. Those trips never occur on public property. Under the Wallingford v. Jacksonville paper case, a continuous interstate journey doesn't begin until the goods enter the stream of interstate commerce. I'm confused about that because looking at the maps that were in CTS's brief and the evidence in the record, it showed that there were public roads that you had to drive over, that plaintiffs had to drive over to get from one warehouse to another. To get to the warehouses, to get to the drop lot, but not to the parking spots on the side of the road. So we can see that from the parking spots on the side of Green Bay Packaging's shipping container, other drivers do pick up those truck trailers, deliver them out of state. But there's no evidence that happens anywhere else. And for those trips where we do concede there was an immediate pickup and delivery, those trips never occur on public property. Counselor, can I just ask you real quick, and then you can return to this line of argument, which I would like to hear. Did you raise before the district court this point about the cardboard needing to be transformed into a finished product? CTS says that you forfeited that, that you didn't raise it before the district court. We're not relying on that argument in this appeal. I believe the argument was briefly raised before the district court. I think a more important argument, though, and we're talking about a depure operation here, is that when the box was delivered to depure are unfinished boxes. When those boxes get delivered, they have to be finished into finished boxes before they can be shipped to customers. Therefore, there's no continuous trip where those unfinished boxes we immediately deliver to our customers. I mean, I think that's more the importance of the processing, is to show there was no continuous journey of those unfinished boxes to interstate customers. Counsel, for the local transport that you're focusing on, is there any indication as to whether assignments of different kinds of local trips are allocated among the plaintiffs in some systemic way, or are they indiscriminately assigned, I think is the phrase we often hear in these cases? Well, the plaintiffs had different roles. Cookin and Berlacca were assigned to shipping container. Freshman was assigned to the warehouses. And Robinson was assigned to depure. But regardless of that, I think our argument is that there was no evidence any spotters were ever involved in part of a continuous interstate journey. Well, I know that's the conclusion, but I just want to... The question is whether any significant quantity of the local trips are part of continuous interstate movement, as I understand the law. Right. But the answer to your question is they did have different roles. In a way that we need to worry about? Not in our opinion, because there's no evidence any spotters ever were participating in one leg of a continuous interstate journey, or more specifically, the first leg of a continuous interstate journey. In your view, does the evidence show that trailers were always unloaded when they went in and out of a warehouse? The available evidence is that the trailers were always unloaded. That's paragraph A of the Freshman Declaration. Nothing from CT has disputed that or suggested that trailers would not be unloaded elsewhere. Whose declaration? Travis Freshman. Freshman. That's page 84 of the appendix. The very last point I want... So going back to the delivery to the site of the facility, because those never entered the stream of interstate commerce, those cannot be the first leg of a continuous interstate journey. The final point I want to make, and I think the District Court's reasoning really is, because the plaintiffs did drive on roads and deliver products, because CTS did deliver a portion of the Green Bay packaging products out of state, the plaintiffs must have been involved in those interstate deliveries. And that's contradictory to the Walling v. Jacksonville paper case. In Walling, there were 12 warehouses. Five of them had interstate products. Seven of them did not. The court held that the drivers for those seven other warehouses were not interstate drivers at all. The analysis must focus on the specific drivers involved, not the overall operation of the company. Those specific operations, there's no evidence the plaintiffs ever made the first leg of a continuous interstate journey of products. Counselor, can I ask you briefly, what exactly are the stakes here? In terms of the difference between FLSA and motor carrier coverage? The difference is that the plaintiffs never received overtime pay while they were employed by CTS. We believe the amount of liability may be up to $150,000 to $200,000. If you're covered by the motor carrier, what, overtime kicks in after 45 hours? Well, the employer never has to pay you overtime if you're covered by the Secretary of Transportation. Never? Never. And these employees were never paid overtime at CTS. Are there, from an employee's perspective, are there ever benefits to being treated as subject to the motor carrier exemption? Not in our opinion. In addition to that, these employees really were not treated as covered by the motor carrier exemption. For example, Kukin stated in his declaration that he was not subject to the hours of service requirements. He could drive 90 hours without keeping a lock. Okay. I'd like to reserve the rest of my time for rebuttal. Thank you, Counselor. Mr. Butcher. Good morning. Andy Butcher on behalf of the Defendant Appellee Contract Transport Services. The issue before the court is whether the Secretary of Transportation has jurisdiction over these drivers. There are two ways to demonstrate that there's jurisdiction. One is that the individuals actually drove commercial motor vehicles in interstate commerce, and the second way is whether they were subject to transporting product that moves in interstate commerce. The district court appropriately found, on the second prong, that these individuals were subject to transporting product in interstate commerce based on the fact that Contract Transport Services is an interstate motor carrier with authority issued by the Federal Motor Carrier Safety Administration. The fact that there are over 5,000 movements that were demonstrated at the Green Bay packaging facilities where these individuals worked that moved from within Wisconsin to either outside of Wisconsin or from another state into Wisconsin, and also the fact that these individuals were commercial motor vehicle drivers. The plaintiff has been focusing on this terminology distinction between a spotter and a driver, and this is a legal issue that's got a legal definition to look to in the federal regulations at 49 CFR 390.5. The definition of driver in that section states that it's an individual who is operating a commercial motor vehicle. Go then to what is a commercial motor vehicle, also defined in section 49 CFR 390.5. Commercial motor vehicle is any vehicle weighing over 10,001 with the gross vehicle weight rating that's admitted in this case that was transported on a highway in interstate commerce. Counsel, let me interrupt you. So I think that the distinction between spotters and drivers, I agree it doesn't matter they're drivers, but I think it's just a shorthand way of saying that they were not driving as part of an interstate journey. It was intrastate. So could you address the plaintiff's argument that because these boxes were stored, the journey was interrupted, and therefore it was not part of one continuous interstate journey? So we do contest that all of these trailers were emptied into warehouses before being moved again. The only evidence that the plaintiffs have proffered on that point is the declaration that counsel had mentioned. In the deposition that was taken, both Mr. Frischman and the other plaintiffs, these are cited in appendix 84, supplemental appendix 84 to 104. The plaintiffs had testified to having sealed the trailers and having no knowledge of there being unloading that occurs at the facilities. Also, we look at certain bills of lading that were proffered, and you can tie together that there were movements that would occur on one day from an agreement packaging facility, dropped a few miles away at a different location, and then moved within 24 hours to the end destination out of state. It's not a reason. One for instance, these trailers, 53-foot trailers, are being unloaded at a warehouse, only to be loaded back up again with product that's moved outside of the state. Regardless, the fact is that these plaintiffs were subject to transporting the product in interstate commerce. Are you saying you think that they could have been assigned to drive to Michigan or Ohio? Is that your theory that you want to rely on? That's not the theory we want to rely on, Your Honor. I do believe that they could be assigned to do that. But they never were. Correct, Your Honor. Right, so that's not going anywhere. So the theory that we're relying on here is that these individuals would transport product on public streets, as page 8 and 9 provide the graphics for our brief to show what those public streets are, moving loaded trailers with customer orders so that a second driver could take it from the warehouse facility and, like handing off a baton in a race to another driver, that other driver would then take the product and move it outside of the state. The fact that we have over 5,000 examples of documented interstate trips that the contract transport services moved from the Green Bay Packaging Facility, the plaintiffs acknowledge that there is product that is moved outside of the state from these two locations in Green Bay, one in Green Bay, one in De Pere. The nub of the issue here is that you have Mr. Puwaka, Mr. Keekin, Mr. Frischman, were the ones working at staffing one of the facilities. There's only one way to get the product that was moving out of state from the manufacturing facility for the first leg to the warehouse where it was picked up and then brought out of state. It's these drivers who are performing spotter duties had to have moved the product. Do you need the bills of lading to show that? What happens if the bills of lading aren't admissible? I don't believe that we need the bills of lading. They're helpful evidence to demonstrate the interstate nature of the operation. The Notice of Interpretation in 1981 that the Secretary of Transportation put out describing its jurisdiction said that statements from the carrier about the interstate nature of its operation would be sufficient to and also demonstrating that the drivers would be subject to transport, any of those loads would be sufficient to provide jurisdiction. Are the bills of lading admissible? Yes, Your Honor, we do believe they are admissible, both because of the content and distinctive characteristics of the bills of lading themselves and we also in a belt and suspenders approach on the reply brief after being challenged for the first time on the admissibility of these bills of lading provided a declaration from an individual at Contract Transport Services that identified and authenticated the documents. It's a little weird to have somebody from one company authenticate a business record of another company, right? Because wasn't CTS, wasn't that witness, authenticating the Green Bay packaging document? Yes, Your Honor, and again, the belt and suspenders approach, there's never been a question in the litigation that these were somehow doctored up documents. You have to have a bill of lading when you're doing transport of product. It's a, and again, if you even didn't rely on the bills of lading at all, you still have the Aaron Cunningham declaration that identified these over 5,000 movements, 21% of the product that had moved from Green Bay packaging facility and what's important with the Cunningham declaration is that that 20% that he identifies are movements that Contract Transport Services did the entire movement on. So this idea that you need to show the intent of the shipper, there's no need for intent when we are the ones who move the entire product. We know for certain that that product was taken out of the facilities because we took it out of the distribution facility and we moved it to locations outside of the state. That's why this focus here on the intent of the shipper is unnecessary. Counsel, let me make sure. So Judge Hamilton had asked about the significance, asked the Plaintiff's Counsel about the significance of being subject to the Fair Labor Standards Act versus the Motor Carrier Act. And as I understand it, the reason why the Secretary of Transportation has jurisdiction over here is because they want the incentives to be different and for safety they don't necessarily want drivers working overtime because of the risks that those kinds of long overtime hours pose when drivers are out on the road. But the plaintiffs say that sometimes they were working 90 hours a week, which pursuant to the rationale of the Motor Carriers Act would be unsafe. So you're correct that the reason why the Secretary of Transportation would have jurisdiction is because of the safety issues that are associated with the trucking industry. If, in fact, the individuals had worked 90 hours and the Department of Transportation had audited the records, there were any number of remedies that the Department of Transportation could have brought against contract transport services. We, of course, deny that there was a violation. But, frankly, that bears in favor, militates in favor of why you want the Secretary of Transportation to have that jurisdiction. What incentive did these drivers have to work 90 hours a week if they were not going to be paid overtime because they were subject to the jurisdiction of the Secretary of Transportation? They don't have an incentive to work that many hours. So they were just mistaken. They just didn't realize, hey, we're working for free now. No, they weren't. They were paid hourly. They just weren't paid overtime. Correct, Your Honor. Okay. Despite this notion here that reliance on the Secretary's jurisdiction is an effort to somehow evade the FLSA, this has a long history. It's spelled out in the Levinson case that when the Motor Carrier Act was passed in 1935 and it gave exclusive jurisdiction over the hours and qualifications of drivers to, at that time, the Interstate Commerce Commission, it was recognized the import of interstate safety in commercial motor vehicles. Three years later, when the FLSA is passed, they include an exception to the requirement for overtime in Section 213b1 of the FLSA that, again, confirms that the ICC at that point, now the Secretary of Transportation, has sole jurisdiction over the hours that these individuals would be working. And so what CTS was doing was violating those regulations by permitting them to work these many hours? According to Plaintiff, that anecdotal bit of somebody working 90 hours, my understanding of the hours of service, if that were an inaccurate description, barring there being an emergency situation where the hours of service would, at that point, there are some exceptions. But as a general matter, yes, you're not permitted to be working 90 hours. And that's not in the record, though, those 90 hours? That's correct. I'm not certain, Your Honor. If it is, it's an anecdotal bit from someone's declaration. It's certainly not some systemic issue. And if you look at the Levinson decision in 1947 from the Supreme Court, it harps on this safety aspect of why the Motor Carrier Act was passed and why the ICC would have sole jurisdiction over these individuals. It says, to preserve intact the safety programs of the Motor Carrier Act, Congress made the determination that they have attached primary importance to safety, even to the exclusion of overtime. And I would submit that the humanitarian aspect of having an agency that's overlooking the safety of the roads and can enforce penalties against motor carriers who are trying to incentivize people to work longer hours is a greater humanitarian need, or certainly up there with what overtime might be as well. And given that it's the character of the activities, not the amount of time that's spent performing them, that's the important aspect of the Motor Carrier Act exemption. The reality is, and this is from the Levinson decision, where 10 minutes of driving from an unqualified driver could be just as harmful as 30 days of driving by a qualified driver. You want to ensure, and Congress intended for this to happen, that these drivers are qualified and have an agency overlooking the hours that they're working. And that's why it's, since 1935, it has been the sole discretion of first the ICC, now the Secretary of Transportation under the Federal Motor Carrier Safety Administration, to enforce the hours that are working for these drivers. Council, what's the conclusive evidence that trailers that the plaintiffs drove locally were kept sealed, were not unloaded, before they were transported in interstate commerce? I don't believe that there is conclusive evidence. There are statements from Aaron Cunningham and his declaration that the trailers would be loaded and then taken from either the warehouses or the drop lot to locations either within Wisconsin or outside of Wisconsin. The fact that there's the one statement from a plaintiff  that is in contrast to his deposition testimony in which he said that the trailers were sealed and he doesn't know what happened to the product. But if you take at face value that the product would be unloaded and then placed into a warehouse and put back onto a truck for transport outside of the state, when you look at both the bills of lading but also the appendix that the plaintiffs had submitted here where there are a list of the movements that were made by the plaintiffs and it tracks how long products stayed within the state. The fact is that there are, between the product moved within one to six days of being moved on the initial step by the plaintiffs here. You were referencing a little bit ago the 1981 Notice of Interpretation from the department. Yes, Your Honor. Which doesn't really address, at least as I view it, the problem we're trying to deal with here. It was more the 92 guidance that deals with the interruption or continuous interstate transportation. As you may recall, our opinion in the Collins wine case was not enamored with the regulatory guidance in that approach. I wonder if you could tell us what you think the standard should be with respect to continuous movement, these local legs of what you want to treat as continuous movement. What should the standard be? In this case, we don't need to look at the fixed and persistent intent of the shipper at all because the evidence that we've provided is of a motor carrier who can demonstrate they've transported the product from start to finish from one state to another. Where you run into the fixed and persistent intent issue is when, for instance, in the Collins case, there was a motor carrier who would take the product, the wine, frequently from California. It would get brought into the state, and then the wine company there would move the product from a warehouse to final locations. So from your perspective, product remains unchanged, same carrier all the way through. Those are the critical factors here? Correct, Your Honor. Okay, thank you. If there are no further questions, we ask that the court affirm the district court's opinion, find that the drivers were subject to dispatch on and transport of interstate loads. Thank you, Counsel. Thank you. I want to start by making a correction. The Kuklin Declaration in Paragraph 5 states that he could work up to 19 hours a day, not 90 hours a week, but that still violates the DOT rules for the maximum number of hours he can work. Now, if a CTS tells you there were 5,000 interstate trips by our drivers, if a CTS, if Green Bay Packaging manufactures product, that product gets immediately loaded onto a trailer, and that trailer gets delivered immediately out of Wisconsin, that is one of those 5,000 trips. But the plaintiffs had no involvement in that trip. The problem with CTS' evidence in this case is there is no evidence the plaintiffs were ever involved in any of those 5,000 trips. When they dispute the basis of Freshman's knowledge of what was in the trailers when he moved them, the deposition testimony is that the plaintiffs would have to close and sometimes seal a trailer before they can move them. So, of course, when they close the door on a trailer, they do know what is in that trailer, whether that trailer is empty or whether that trailer is full. Ultimately, the case comes down to this. Just because the plaintiffs moved a trailer to a warehouse, just because, whether it be 12 hours later, 24 hours later, or 2 days later, that same trailer gets used to make an interstate delivery does not prove the same boxes or the same products were in that trailer, both when the plaintiffs moved it and during the subsequent interstate movement. And without that proof, there is a clear dispute over whether the plaintiffs ever participated in the first leg of a continuous interstate movement. And that's an issue for the jury to resolve, which the district court erred by taking away from the jury. We therefore ask for this case to be reversed and remanded to the district court. Thank you. Thank you, counsel. Thanks to both counsel and the cases taken under advisement.